UNITED STATES *v.* SEMON BACHE & Co. (No. 3612)[1]

United States Court of Customs and Patent Appeals, November 6, 1933

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*Jerome G. Clifford* for appellee.

[Oral argument October 11, 1933, by Mr. Folks and Mr. Clifford]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court sustaining appellee's protest against the classification by the

---

[1] T. D. 46974.

Collector of Customs of certain imported glass about one-fourth inch in thickness and having a yellowish tinge, this tinge, apparently, resulting from the quantity of lead used in its manufacture. The importation was under the Tariff Act of 1930.

The collector classified it under paragraph 230 (d) of said act, the pertinent portion of which reads:

PAR. 230. (d) All glass, and manufactures of glass, * * * not specially provided for, 50 per centum ad valorem.

The protest claims the merchandise to be properly classifiable as plate glass under paragraph 222 (a) of said act, the pertinent portion of which reads:

PAR. 222. (a) Plate glass, by whatever process made, not exceeding three hundred and eighty-four square inches, 12½ cents per square foot; above that, and not exceeding seven hundred and twenty square inches, 17 cents per square foot; above that, and not exceeding one thousand and eight square inches, 17½ cents per square foot; all above that, 19¾ cents per square foot * * *.

The contention of the Government before us is, as it appears to have been before the trial court, principally, that, by reason of the proven use of the glass in question, it is properly classifiable under paragraph 218 (a), the pertinent portion of which reads:

PAR. 218. (a) Biological, chemical, metallurgical, pharmaceutical, and surgical articles and utensils of all kinds, including all scientific articles, and utensils, whether used for experimental purposes in hospitals, laboratories, schools, or universities, colleges, or otherwise, all the foregoing (except articles provided for in paragraph 217 or in subparagraph (e)), finished or unfinished, wholly or in chief value of glass, 85 per centum ad valorem * * *.

It is insisted by the Government that the importer did not overcome the presumption of correctness of the collector's dutiable classification, but the brief adds:

* * * If, however, this court should be of the opinion that the merchandise at bar is more specifically provided for in paragraph 218 (a) than it is in paragraph 230 (d), under which the collector classified it, the judgment of the court below should be reversed without affirming the action of the collector.

Much testimony was taken in the case, appellee having called one witness, Mr. Sobel, its vice president, and the Government having called 11 witnesses, some of whom had been sellers of glass, similar to that imported, and others of whom had been engaged in manufacturing similar glass. A number of witnesses testified particularly as to use. Exhibits were filed in evidence.

No comprehensive review of the testimony is deemed to be here necessary. The opinion of the court below, T.D. 45973, reviews it in considerable detail. Commercial designation differing from common meaning was held not to have been established by the Government's testimony and, before us, both in its brief and in oral argument, the Government disclaims any purpose of relying upon commercial designation, but insists that classification should be determined by chief use

That the merchandise involved is a species of plate glass, as found by the court below, does not, we think, admit of question, and we further think that it is clearly established by the testimony of a number of witnesses, including Mr. Sobel himself, as well as witnesses called by the Government, that its principal use is in doors, windows, and other openings of rooms in which X-ray machines are operated. By reason of the lead used in its manufacture, the glass serves as a protection to those persons who have to do with the operation, or observation in operation, of such machines. Other uses testified to are as "doors leading from a street into a hospital", as "fluoroscopic screens", as "lead protection screens", and for "storing radium." There is also mention of its use for "goggles" and "peepholes."

It may be stated that the briefs of the respective parties differ somewhat in their statement as to the exact sizes of the pieces of glass included in the several entries covering the importation. The brief of the Government, citing testimony of Mr. Sobel, states that they vary from "4 by 5 inches up to 50 by 60 inches." The brief of appellee states variations of from 12 by 9 inches to 37 by 16½ inches. It is noted that the verbatim statement of Mr. Sobel is "* * * Well, I don't know the exact size of this particular shipment, but they varied. * * * They *may* run all the way from 4 by 5 inches up to 50 by 60 inches." (Italics ours.) Since the question of size is not important, in the view which we take of the case, there is no occasion for determining specifically just what the sizes were.

Without entering into elaborate detail which would but carry us over grounds covered quite fully in the opinion of the trial court, we state our conclusions in the case.

It is our opinion that paragraph 222 (a), especially when taken in connection with paragraph 222 (c), more specifically defines the involved merchandise than does paragraph 230 (d) where the Collector of Customs classified it, and we do not think it is a biological or surgical article or utensil provided for by paragraph 218 (a).

In said paragraph 222 (c) the Congress has itself defined "plate glass" for tariff purposes in the following language:

PAR. 222. (c) The term "plate glass", when used in this Act, means glass wholly ground and polished on both surfaces.

The glass imported falls squarely within this definition, and we find nothing in the act itself, or in the legislative history cited by the Government in support of its insistence as to legislative intent, to indicate that Congress intended to exclude plate glass from paragraph 222 (a) simply because it contains "a very heavy lead content."

We quote the following from the opinion of the court below:

Mr. Sobel's testimony, that he had imported this glass for 30 years, and during all that time it was classified by the collector as plate glass, was uncontradicted. Therefore, for 30 years the collector was of opinion that this merchandise was

plate glass. His classification must have been based on some facts indicating it was plate glass. What those facts were has not been disclosed. After some 30 years of classification of this merchandise as plate glass, when this importation was made on March 28, 1931, the classification was changed to bring it within the catchall provision of paragraph 230 (d) for "all glass, and manufactures of glass, * * * not specially provided for." What caused the collector to change the classification is not shown by this record.

It is true that when the glass paragraphs of the Tariff Act of 1922 are compared with the glass paragraphs of the 1930 act many changes from the former are found in the latter, but we find none which seems to indicate any intent upon the part of the Congress to bring about a change in the classification of such glass as is here involved. Neither do we find any changes in the "glass and manufactures of glass," or the "Biological * * * and surgical articles and utensils * * * wholly or in chief value of glass," paragraphs which give any intimation of a congressional purpose to bring merchandise such as that at bar within the terms of either.

It is our view that the trial court, in its quite comprehensive and well-reasoned opinion, reached the correct conclusion, and its judgment is *affirmed*.

### DISSENTING OPINION

BLAND, Judge: It is with reluctance that I respectfully dissent from the majority opinion, because I realize that it is a hard case on the record which is before the court. I dissent because I think the record does sufficiently show that the importation is not the plate glass referred to in paragraph 222 (a). I differ with the majority in its interpretation of the meaning and purpose of paragraph 222 (c). This court and the court below accepted paragraph 222 (c) as a definite and complete definition of plate glass. The context of the paragraph does not support this conclusion, and the legislative history of the same absolutely refutes it.

The provision in paragraph 222 (c), "The term 'plate glass', when used in this Act, means glass wholly ground and polished on both surfaces", if accepted as a literal and all-inclusive definition, would include optical glass or even optical lenses, if they were not provided for elsewhere, and it would be just as plausible, under the decision of the majority, to put them under the plate-glass paragraph as to put the X-ray glass at bar under it.

A reading of the tariff hearings and the testimony in this case conclusively convinces me that when Congress enacted paragraph 222 of the Tariff Act of 1930 for plate glass, and in paragraph 222 (c) set out the so-called "definition" of plate glass, it never had in mind the inclusion of such merchandise as is at bar. From the tariff hearings before the committees of Congress and from the report of the House committee, it is shown that, subsequent to the passage of the Tariff

Act of 1922, processes other than the old processes of making plate glass were adopted, and that cylinder glass, as well as glass cast on a table, was polished and ground and when so prepared could not be distinguished in commerce from the old form of plate glass. Congress sought to make this new kind of so-called "plate glass" come within the term "plate glass" and take a similar duty because it competed directly therewith and was, no doubt, less costly of production. By the alleged definition it sought to include a less valuable product in the plate-glass paragraph, rather than to bring a more valuable product into it, as is held by the majority in this case.

No one connected with this case has contended that the instant importation was plate glass under the act of 1922, and no one has contended here ·that the enactment of the alleged definition was prompted, even in the least, by a desire to bring merchandise like the instant importation within its terms, and in my judgment the report of the House committee fully and conclusively verifies this conclusion. See Hearings before the Committee on Ways and Means, House of Representatives, Tariff Readjustment, 1929, Volume II, page 1531 et seq., and Hearings before a Subcommittee of the Committee on Finance, United States Senate, Tariff Act of 1929, Volume II, page 538 et seq.

From the House committee report on H.R. 2667, which resulted in the Tariff Act of 1930, at page 34 is found the following:

Paragraph 222: Under the Tariff Act of 1922, specific provision was made for cast polished plate glass. Subsequent to the passage of that act, the industry developed other processes for producing polished plate glass. This product, made by grinding and polishing the surfaces of sheets of glass, is now produced in large quantities by grinding and polishing sheet and cylinder glass as well as glass cast on a table. These various products cannot be distinguished the one from the other after the glass has been ground and polished. In the new bill, all plate glass, by whatever process made, will be dutiable at the same rates of duty, according to the area of the glass.

The meager record in this case discloses that the manufacturers who testified, do not use lead in making the ordinary plate glass of commerce. The ordinary plate glass used requires no lead, and the use to which the importation is put is a use wholly outside of that which was obviously in the minds of the framers of the paragraph involved.

In Summary of Tariff Information, 1929, Volume 1, page 534, is found the following with reference to plate glass:

POLISHED PLATE GLASS

Description and uses.—Cast polished plate glass is composed of practically the same ingredients as other transparent flat glass, such as ordinary window glass, but owing to the method of its production by casting has greater freedom from structural defects. There are many possible imperfections in cast plate glass,

obviated by inspection and selection, and several distinct merchantable grades are recognized. *The chief distinguishing peculiarity of polished plate glass, whether cast or not cast, is that the grinding and polishing (especially the grinding) [lead not mentioned] renders the two surfaces flat and parallel so that there is no distortion of vision when objects are viewed through the glass at an angle. Over 50 percent of the world's production of polished plate glass is consumed by the automobile industry. The next most important use is for glazing windows in residences, office buildings, and other structures. Other uses are for mirrors, deck and port lights on ships, for aquariums, and as a protective covering for desk and table tops.* (Last italics not quoted.)

An examination of all the glass authorities which I can find shows that the composition of plate glass, as that term is ordinarily understood, never includes lead, and that plate glass is the ordinary glass composed of silica, soda and lime which has been rolled and polished and, in some instances, ground to an even surface.

In Knight's American Mechanical Dictionary, Volume II, page 1737, under "plate-glass" it is stated:

The ingredients and their proportions, employed in making plate-glass, are kept secret as far as possible by the manufacturers. The following is given as one of the formulas: Silica, 78 parts; potash, 2; soda, 13; lime, 5; alumina, 2.

This is not a very recent authority, and it is probable that formulae of plate glass are no longer kept secret, but the authorities such as are available all seem to point to the fact that the ordinary plate glass of commerce never included lead.

In Elements of Glass and Glass Making, by Biser, the following with reference to plate glass is found:

#### I. PLATE GLASS

Which comprises; rough plate, rolled plate, ribbed plate, and polished plate, having an approximate composition about as follows:

| | |
|---|---|
| Silica | 74% |
| Soda | 12% |
| Lime | 5.5% |

The authority then lists window glass, flint glass and polished glass, and 53 per centum lead is found in flint glass.

In the Dictionary of Applied Chemistry by Thorpe (1928), Volume III, page 382, the components of American, German, and French plate glass, as listed, do not include lead. Lead or lead oxide is included in glass for tableware and glass for other uses, such as electric-light bulbs, etc.

In the Encyclopaedia Britannica, fourteenth edition (1929), Volume 10, page 414, under "Glass Manufacture", a table, showing the percentage composition of different types of glass, is set out, and plate glass is shown to include silica, iron oxide, alumina, lime and soda, but no lead. Other kinds of glass containing lead are listed.

The majority opinion does not set out the quantity of lead contained in the imported merchandise, but states that it has a yellowish tinge apparently resulting from the quantity of lead used in its manufacture. Appellee's witness Sobel, vice president of the appellee company, in answer to the question by Government counsel, "Do you not know that there is over 60 percent of lead in Exhibit 1?", stated, "There may be", and that "It is supposed to shut out certain rays of light", and that it might affect its hardness or softness. The record further shows that the imported merchandise sells here for as much as $7 per square foot. Certainly the value of the imported merchandise, on account of the lead contained therein, is several times the value of the ordinary plate glass of commerce. The imported merchandise is not invoiced as plate glass when sold by the importer to consumers here, but is invoiced as "Maltese brand X-ray lead glass."

The foregoing considerations bring me to the conclusion that the instant importation under no circumstances could be regarded as plate glass under the old tariff act, and in view of what the House committee stated Congress was trying to do by the alleged definition of plate glass, I am forced to the conclusion that Congress did not intend for X-ray glass, even though ground and polished on both sides, to be regarded as plate glass for tariff purposes.

If the majority had been confronted with a record in which it was conclusively proved that, commercially and commonly, merchandise like the importation is not plate glass, as I see it this fact would have made no difference in the conclusion arrived at, because if Congress has defined plate glass, that definition must be taken, regardless of the understanding of the trade, and, therefore, proof of commercial designation or proof of the common meaning in aid of the court would not be competent.

I think the importation falls within the provision for "all glass" in paragraph 230. I agree with the conclusion of the court that it is not an article or utensil provided for in paragraph 218. The classification by the collector should have been sustained and appellee's protests should have been overruled.

---

REHEARING allowed January 22, 1934.

On rehearing, judgment was affirmed on March 19, 1934, with the following opinion:

GARRETT, Judge: Following the promulgation of our opinion in this case, on November 6, 1933, the Government filed an application for rehearing which was granted. The case was reargued on February 12, 1934, and has been carefully reconsidered, in the light of this reargument, with the result that we find no reason for departing from the conclusion originally reached.

To the end, however, that the meaning of the majority opinion may be clarified, we deem it proper to add thereto that we do not intend the decision to rest solely upon the language of paragraph 222 (c) of the Tariff Act of 1930.   It is our opinion that the merchandise is, in fact, plate glass according to the common and usual definitions of that term, and that, as formerly stated, in effect, the legislative history of paragraphs 218 (a), 222 (a), and 230 (d), Tariff Act of 1930, does not evidence any intent on the part of Congress to change the classification which has long been given it for tariff purposes.

For the reasons stated in our former opinion, as herein explained, the judgment of the United States Customs Court is *affirmed.*

BLAND, Judge, dissents for reasons given in his former dissenting opinion.